USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/3/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

G.DISTRIBUTORS, LLC and GAMCO
INVESTORS, INC.,

                               Petitioners,

-against-

JAMES C. SCANLON,

                               Respondent.

No. 18-cv-02101 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Petitioners G.distrubitors, LLC[1] and GAMCO Investors, Inc. commenced this action against Respondent James C. Scanlon in this Court through their Petition to Stay and Enjoin AAA Arbitration and to Compel Arbitration Before FINRA Pursuant to the Parties' Agreement ("Petition," ECF No. 1). Petitioner requests that the Court issue declaratory and injunctive relief to require Respondent to arbitrate before FINRA. Respondent moves to dismiss the Petition under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6) ("Resp't Mot.," ECF No. 22).

For the following reasons, Respondent's motion is DENIED.

## BACKGROUND

The following facts are derived from the Petition or matters of which the Court may take judicial notice and are accepted as true for the purposes of this motion. *See Ashcroft v. Iqbal,*

---

[1] Petitioners do not include a space in "G.distributors" in their Petition.

556 U.S. 662, 678 (2009); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Petitioner GAMCO hired Respondent in or around May 2006 as Senior Vice President and Director of Mutual Fund Marketing and Distribution to supervise a team of wholesale distributors of Gabelli mutual funds. (Pet. ¶ 8.) This position required Respondent to register as a FINRA broker and to be assigned to a FINRA-registered entity. (*Id.*) Respondent was assigned to work at GAMCO's wholly owned subsidiary, Gabelli & Company, Inc. which was a FINRA member and from which G.distributors was created. (*Id.* ¶ 10.) Respondent became a G.distributors employee and has continued to work as Senior Vice President and Director of Mutual Fund Marketing and Distribution for G.distributors through the present. (*Id.* ¶¶ 10 – 11.) Respondent is a Principal and a Supervisor in G.distributors' FINRA filings, is registered with FINRA as a G.distributors broker, and at least part of his compensation is contingent on his employment by a FINRA member. (*Id.* ¶¶ 12, 13.) Since 2016, Respondent's W-2 forms have been issued by GAMCO.[2] (*Id.* ¶ 14.)

At or around the time Respondent began his employment, he signed an Acknowledgement of Policies and Procedures and Confidentiality/Non-Solicitation/Arbitration Agreement ("Arbitration Agreement") which applied to his employment by GAMCO and its subsidiaries, including G.distributors. (*Id.* ¶¶ 15, 16.) The Arbitration Agreement provided that " 'all claims or controversies arising out of [Respondent's] employment' with GAMCO or its subsidiaries—including claims regarding Scanlon's 'wages or other compensation or benefits'— would be subject to arbitration before a facility provided by NASD, in accordance with its rules, and that only if the arbitration could not proceed before NASD, could it be submitted to the

---

[2] Respondent's W-2s were issued by Gabelli & Company from 2006 to 2008 and by Gabelli Securities, Inc. from 2009 through 2015. (Pet. ¶ 14.)

AAA." (*Id.* ¶ 16.) FINRA is the successor in interest to NASD. (*Id.* ¶ 17.) "As such, arbitrations under the [Arbitration Agreement] must proceed before FINRA, where, as here, that forum is available." (*Id.*)

On September 26, 2017, Respondent raised several disputes regarding his compensation to Mario Gabelli, Chairman and CEO of GAMCO, and around December 5, 2017, Respondent acknowledged that his employment-related claims were subject to arbitration. (*Id.* ¶¶ 19 – 20) (Mogul Decl. Ex. 7, ECF No. 6); ("Stipulation," ECF No. 18.[3]) On or around January 30, 2018, Respondent commenced arbitration against GAMCO before AAA rather than FINRA. (*Id.* ¶¶ 23, 24.) According to Petitioners, this act violated the forum selection clause in the Arbitration Agreement. (*Id.* ¶ 25.) Petitioner GAMCO filed a Statement of Claim with FINRA Dispute Resolution on February 12, 2018, seeking a declaratory judgment that Respondent's employment-related claims were to be arbitrated before FINRA, not AAA, and that Respondent's claims were untimely and without merit. (*Id.* ¶ 21.) On February 16, 2018, Petitioner GAMCO filed an Amended Statement of Claim with FINRA, naming G.distributors rather than GAMCO as the petitioner. (*Id.* ¶ 22.) A FINRA Senior Case Specialist, on February 20, 2018, indicated that Respondent is required by FINRA rules to arbitrate his dispute before FINRA and must submit a signed submission agreement and answer before April 11, 2018. (*Id.* ¶ 32.) However, on February 23, 2018, an AAA Manager of ADR Services informed the parties that AAA would proceed with administration of the arbitration. (*Id.* ¶ 33.) The result is that there are parallel arbitrations currently pending before the AAA and FINRA. (*Id.* ¶¶ 30 – 31.)

To resolve the issue of the parallel arbitrations, Petitioners brought this action presently before the Court and request that the Court (1) declare that any dispute arising out of Respondent's

---

[3] Parties stipulated that the Court should consider the Goldman and Mogul Declarations and all annexed exhibits as if they were attached to the Petition.

employment must proceed before the Financial Industry Regulatory Authority ("FINRA") and not the American Arbitration Association ("AAA"); (2) issue a permanent injunction discontinuing the AAA arbitration and compelling arbitration before FINRA; and (3) issue a preliminary injunction staying Respondent's AAA arbitration and enjoining a continuation of the AAA arbitration. (*Id.* ¶¶ 34 – 44.) Respondent moves to dismiss the Petition because the Court lacks subject matter jurisdiction to adjudicate the matter and because Petitioners have failed to state a claim upon which relief can be granted.

## STANDARD ON A MOTION TO DISMISS

When a court lacks the statutory or constitutional power to adjudicate a case, it should dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1). *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint or the petition, *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

To survive a Rule 12(b)(6) motion, a complaint, or petition, must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *D/S Norden A/S v. CHS de Paraguay*, No. 16-CV-2274(LTS), 2017 WL 473913, at *2 (S.D.N.Y. Feb. 3, 2017). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level' " to move beyond a motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555); *Riano v. Town of Schroeppel*, 13-CV-352(MAD)(TWD), 2015 WL 4725359, at *3 (N.D.N.Y. Aug. 10, 2015). In deciding a motion to dismiss, a court must take all material factual allegations in the petition as true and draw reasonable inferences in the non-moving party's favor. *Iqbal*, 556 U.S. at 678; *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996). However, the court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Further, a court is generally confined to the facts alleged in the complaint or petition for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *D/S Norden A/S*, 2017 WL 473913, at *2 (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

## DISCUSSION

### I. Amount in controversy

According to Respondent, the Petition should be dismissed because the amount in controversy in the litigation currently before the Court does not exceed $75,000, meaning that the requirements for subject matter jurisdiction under 28 U.S.C. § 1332 are not satisfied. (Resp't Mot. p. 3.) To survive a motion to dismiss, the party asserting diversity jurisdiction, the Petitioners in this case, must plausibly establish the existence of diversity jurisdiction. *See Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 273 (2d Cir. 1994). The Petition states that "complete diversity of citizenship exists between the parties and more than $75,000, exclusive of interest and costs, is at stake in the underlying arbitrations between the parties." (Pet. ¶ 5.)

To preserve judicial resources, federal courts have limited subject matter jurisdiction over disputes between citizens of different states. 28 U.S.C. § 1332. "The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 – 90 (1938). Diversity jurisdiction exists when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Parties do not dispute that the diversity of citizenship element is met.[4]

When analyzing whether the amount in controversy requirement of diversity jurisdiction is satisfied on a motion to dismiss, the sum claimed by the plaintiff controls if that claim is apparently made in good faith. *Id.* "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* Typically, a conclusory statement by a party that the amount in controversy is met is insufficient to support subject matter

---

[4] Petitioners are Delaware companies and Respondent is a Massachusetts resident. (*Id.* ¶¶ 2 – 4.)

jurisdiction. *See Amica Mut. Ins. Co. v. Levine*, 7 F. Supp. 3d 182, 192 (D. Conn. 2014) (granting the defendant's 12(b)(1) motion "[g]iven the fact that the Plaintiff's only allegation tending to establish the amount in controversy is the generic claim in the Complaint that the amount 'exceeds $75,000.00 exclusive of interest and costs' is . . . unsupported by the record"); *John Wiley & Sons, Inc. v. Glass*, 10-CV-598(PKC), 2010 WL 1848226, at *3 (S.D.N.Y. May 7, 2010) (suggesting that a conclusory statement that the amount in controversy is met is insufficient to survive a motion to dismiss); *Johnson-Kamara v. W. Chacon Trucking*, 05-CV-9900, 2006 WL 336041, at *3 (S.D.N.Y. Feb. 9, 2006) (holding that the defendants failed to show that the federal court had subject matter jurisdiction because they "make only the conclusory statement that the amount in controversy exceeds $75,000"). In addition to considering any direct statement of the amount in controversy, courts should consider the value of the relief that the petitioners seek in determining whether the petition or complaint satisfies the requirements for diversity jurisdiction. *See Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 01-CV-1574(ILG), 2005 WL 2148981, at *4 (E.D.N.Y. Sept. 7, 2005).

For cases in which the plaintiff requests declaratory or injunctive relief rather than monetary damages, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). Because the amount in controversy is from the petitioner's perspective, "the value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted." *Am. Standard, Inc.*, 498 F. Supp. 2d at 717 (citing *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir.2000)). In *Correspondent Services Corp. v. JVW Investment, Ltd.*, the plaintiff sought a declaratory judgment relating to the

ownership of a CD, and the defendant moved to dismiss for lack of subject matter jurisdiction. 99-CV-8934(RWS), 2004 WL 2181087, at *8 (S.D.N.Y. Sept. 29, 2004). The court determined that, based on the "most straight-forward reading" of the complaint, the object of the litigation was the CD and the amount in controversy was to be determined based on a valuation of the CD. *Id.* at 12. Here, the object of the Petition is to stay arbitration before the AAA and to compel arbitration before FINRA. Respondent argues that the value of this object is zero and that the Petitioners therefore fail to satisfy the amount in controversy requirement. (Resp't Mot. p. 4.)

However, courts in the Second Circuit apply a different valuation standard to petitions for courts to compel or stay arbitration. "In considering the jurisdictional amount requirement the court should look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award." *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957); *see Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998). Accordingly, "[t]he amount in controversy in a petition to compel arbitration is determined by the underlying cause of action that would be arbitrated," and "the amount in controversy is the difference between winning and losing the underlying arbitration." *Doctor's Assocs., Inc.*, 150 F.3d at 160; *see Castlewood (US), Inc. v. Nat'l Indem. Co.*, 06-CV-6842(KMK), 2006 WL 3026039, at *3 (S.D.N.Y. Oct. 24, 2006).[5] In this case, the amount in controversy, therefore, should be determined based on the value disputed by the parties in the underlying arbitration.

---

[5] Respondent argues that the cases in which courts apply this standard do not apply to this case because they concerned whether a matter would be arbitrated and the parties in this matter already agree that their employment dispute should be arbitrated. (Resp't Mot. p. 5.) Respondent misstates the object of these cases. They actually concerned requests to compel or to stay arbitration which is the issue in the case currently before this Court. *See generally Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157 (2d Cir. 1998); *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511 (2d Cir. 1957); *Castlewood (US), Inc. v. Nat'l Indem. Co.*, 06-CV-6842(KMK), 2006 WL 3026039 (S.D.N.Y. Oct. 24, 2006).

Respondent's claim before the AAA is for at least $6,500,000[6] which is well in excess of the amount in controversy required for diversity jurisdiction. (Pet. ¶ 24); (Respondent Notice of Motion, Ex. A, ECF No. 22.)

Because the parties are of diverse citizenship and the amount in controversy requirement is satisfied, Respondent's motion to dismiss for lack of subject matter jurisdiction is denied.

## II.     Statement of a claim

### A. FINRA as successor to NASD

According to Respondent, Petitioners fail to state a plausible claim because AAA is the proper venue for arbitration, as NASD no longer exists. (Resp't Mot. p. 7.) The Arbitration Agreement provided that all disputes arising from Respondent's employment with GAMCO or its subsidiaries would be subject to arbitration before NASD, "and that only if the arbitration could not proceed before NASD, could it be submitted to the AAA." (Pet. ¶ 16.) Respondent argues that because NASD no longer exists, he was entitled to initiate arbitration before AAA. (Resp't Mot. p. 8.) However, this argument has been "roundly and repeatedly rejected in this Circuit." *Rusciano v. Oppenheimer & Co., Inc.*, 14-CV-1452(CM), 2014 WL 1677133, at *2 (S.D.N.Y. Apr. 25, 2014); *see Singh v. Raymond James Fin. Servs., Inc.*, 13-CV-1323(GBD), 2014 WL 11370123, at *1 (S.D.N.Y. Mar. 28, 2014); *Clinton v. Oppenheimer & Co., Inc.*, 824 F. Supp. 2d 476 (S.D.N.Y. 2011) ("[United States] District Court for the Southern District of New York, [ ] applying New York law and the Federal Arbitration Act ("FAA"), has routinely held that arbitration clauses designating NASD requires arbitration before FINRA.").

---

[6] At the motion to dismiss stage, a court may consider documents incorporated into the petition by reference or documents of which the petitioners were aware in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). Here, Petitioners were aware of this document, Respondent's demand for arbitration before the AAA, as that document led Petitioners to commence arbitration before FINRA and, eventually, to bring this litigation. (Pet. ¶ 24.)

NASD merely changed its name to FINRA; it did not cease to exist. *Rusciano*, 2014 WL 1677133, at *2. To remain effective, agreements to arbitrate before NASD need not include language about NASD successor entities; those agreements now require arbitration before FINRA because NASD and FINRA are the same entity. *Id.* Accordingly, as FINRA is essentially the same entity as NASD in all but name, the Arbitration Agreement requires arbitration before FINRA unless arbitration cannot proceed before FINRA.

### B. Proper parties for arbitration

The core dispute between the parties appears to be which Petitioner, GAMCO or G.distributors, is the proper party to the arbitration of Respondent's wage dispute. Respondent states that the arbitration proceeding he initiated was only against GAMCO, not G.distribution, and that the proper venue is therefore the AAA. (Resp't Mot. pp. 7 – 9.) Because GAMCO is not a FINRA member, Respondent and GAMCO can only arbitrate before the AAA. (*Id.*) FINRA may arbitrate employment discrimination claims, claims involving registered clearing agencies, or disputes between FINRA members, members and associated persons, or associated persons. FINRA Code of Arb. Proc. for Indus. Disputes § 13101. Conversely, Petitioners claim that Respondent's AAA Statement of Claim for the employment-related wage dispute against GAMCO was improper because G.distributors, a GAMCO subsidiary, is in fact Respondent's employer. (Pet. ¶¶ 2, 22.)

Petitioners state sufficient facts to support a plausible claim that Petitioner G.distributors is Respondent's employer and that FINRA is the required venue for arbitration under the Arbitration Agreement. The Petition notes that Respondent became a G.distributors employee in May 2011 and that he "has continued as a G.distributors employee through the present." (Pet. ¶ 4.) GAMCO is, according to the Petition, merely the holding company and corporate

10

parent of G.distributors but is not the employer. (*Id.* ¶ 9.) In deciding a motion to dismiss, the Court is required to draw all reasonable inferences in Petitioners' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because G.distributors is, accepting the Petition as true for the purposes of this motion, Respondent's employer and has been since 2011, it is reasonable to infer that an arbitration proceeding on an employment-related wage dispute should include G.distributors. Also, G.distributors, unlike GAMCO, is a member of FINRA and can participate in FINRA arbitration with another FINRA member. (*Id.* p. 2.) Under the terms of the Arbitration Agreement, arbitration against G.distributors should proceed before FINRA, formerly NASD. Although Respondent's motion to dismiss presents a compelling argument that GAMCO is his employer, the Petition plausibly establishes that G.distributors, not GAMCO, is in fact Respondent's employer and the proper party to the arbitration; at the motion to dismiss phase, the Court must construe all facts in favor of Petitioners. *Iqbal*, 556 U.S. at 678. Because the Petition states a facially plausible claim that G.distributors is the proper party to an employment arbitration, the Petitioners plausibly claim that they are entitled to a stay of the AAA arbitration and an injunction to compel arbitration before FINRA. Accordingly, Respondent's motion to dismiss must be denied.

## CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss Petitioners' Petition is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 22. All arbitration is stayed pending the outcome of this action. Respondent is directed to file an answer to Petitioners' Petition by December 21, 2018. The parties are directed to appear before this Court for an initial pre-hearing conference on January 4, 2019 at 12:00 PM. The parties are further directed to confer, complete, and submit to the Court the attached case management plan before the initial pre-hearing conference. This constitutes the Court's Opinion and Order.

Dated: December 3, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT  Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

                                           Plaintiff(s),      **CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER**

- against -

                                           Defendant(s).     _____ CV _____ (NSR)
-----------------------------------------------------------x

     This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge